UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

JAMES GARNETT, JR. (BRIGGS),                    CIVIL NO. 10-3369 (ADM/JSM)

      Petitioner,

v.                                                                  **REPORT AND RECOMMENDATION**

BECKY DOOLEY, Warden,

       Respondent.

_____

This matter is before the undersigned United States Magistrate Judge on James Garnett Jr.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket No. 1]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.   PROCEDURAL BACKGROUND

The State of Minnesota charged Petitioner with three counts of domestic assault in violation of Minn. Stat. § 609.2242, subd. 4 (2006); three counts of terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2006); two counts of second-degree assault in violation of Minn.Stat. § 609.222, subd. 1 (2006); and two counts of harassment in violation of Minn.Stat. § 609.749, subd. 3(a)(5) (2006).  See State v. Briggs, NO. A08-0131, 2009 WL 1444026 at * 1 (Minn. Ct. App., May 26, 2009), rev. denied (Aug. 11, 2009).

On September 20, 2007, a jury convicted Petitioner of three counts of domestic assault, three counts of making terroristic threats and two counts of second-degree assault.  Based on the finding of the sentencing jury that Petitioner was a "Danger to

Public Safety," Petitioner was sentenced to 99 months in prison, which was an upward departure from the Minnesota Sentencing Guidelines.

Petitioner appealed his conviction and sentence to the Minnesota Court of Appeals and raised the following issues:   (1) his constitutional right to counsel was waived because his waiver of the right to counsel was invalid, as he was not competent to make a waiver and because his waiver was not made intelligently and voluntarily; (2) the prosecutor improperly introduced evidence of prior convictions to prove an element of felony domestic assault without asking Petitioner to stipulate to those prior convictions; (3) the prosecutor improperly vouched for the credibility of the state's witnesses in his closing argument; (4) the prosecutor improperly commented on Petitioner's character during closing argument by suggesting that his conduct was part of a controlling and terroristic relationship with the alleged victims; (5) the prosecutor "impugned" his constitutionally protected right to self-representation; (6) the prosecutor improperly referred to audio recordings of telephone calls that were not included in the record; (7) the prosecutor improperly elicited testimony from a police officer who testified that he recognized the defendant from prior professional contacts; (8) the trial court erred by failing <u>sua</u> <u>sponte</u> to give a limiting instruction to the jury regarding relationship evidence; (9) the trial court violated his constitutional right to be present during trial proceedings by not allowing him to attend an in-chambers conference that was conducted in response to the bailiff's report that a juror may have read a newspaper article about the trial; (10) and the trial court erred in allowing an upwards sentencing departure based on two or more past prior convictions for violent crimes and

for being a danger to public safety.[1]   See Briggs, 2009 WL 1444026 at *1-8.   The Minnesota Supreme Court denied review on August 11, 2009.

Upon denial of review by the Minnesota Supreme Court, the Petitioner filed the instant habeas corpus petition ("Petition"), stating the following grounds for relief, which this Court states verbatim:

(1)   Petitioner was not able to oppose the prosecutor as the presiding trial court judge Honorable Margaret Shaw Johnson did not avail to the obligation to inform the petitioner of the right to counsel. The duty of itself to make a penetrating and comprehensive examination of defendant's understanding of the proceeding. Petitioner was not advised of his rights before being allowed to waive counsel, the trial court failed to properly advise petitioner and insure that he was able and willing to represent himself.

(2)   Petitioner's Due Process Rights were violated where the court and the prosecutor gained unfair over pro-se petitioner.[2]

(3)   Petitioner' [sic] was denied prior to the admission of evidence of defendant's past bad acts and during the final jury instructions, a trial court should sua sponte caution the jury not to convict the defendant for these past acts.   Here, the trial court admitted, a harassment restraining order, which listed allege bad acts of

---

[1]   On August 23, 2010, this Court issued an Order [Docket No. 7], instructing Respondent to file an answer to the Petition and that the answer "fully comply with the requirements of Rules 5(b), (c) and (d) of the Rules Governing Section 2254 Cases in the United States District Courts."   Rule 5(d)(1) clearly requires Respondent to file "any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding." Rules Governing § 2254 Cases, Rule 5(d)(1), (d)(2).   Even after the Court notified the Respondent that the record in this case was not complete and requested the entire record, Respondent did not provide the Court with Petitioner's state appellate briefs. Thus, the Court was left to surmise Petitioner's grounds for appeal from the decision by the Minnesota Court of Appeals.

[2]   Based on this Court's review of the grounds in the Petition and Petitioner's supporting memorandum of law (see Brief in Support of Petition for Writ of Habeas Corpus [Docket No. 2] ("Petitioner's Brief"), pp.  18-38), the Court has treated Ground Two as subsumed within the other grounds in the Petition and those claims asserted in the memorandum of law.   As this Court has determined that the other Grounds and claims should be dismissed for the reasons set forth in this Report and Recommendation, infra, the Court similarly finds that Ground Two must be dismissed.

petitioner, as "relationship evidence" without any cautionary instructions.

(4)     Petitioner was deprived of a fair trial, a prosecutor is a minister of justice who should insure a fair trial—not just a conviction at any price. Despite this role prescribed by law, the prosecutor continuously vouched for the complainant and implied to the jury that she had been prevented from standing up to petitioner during an alleged "ten year reign of terror" for which petitioner was not on trial; and

(5)     Petitioner has a constitutional right to be present during all critical phases of trial. Consequently, the trial court erred in excluding petitioner from an-in chambers conference because the court preferred not to have the pro se petitioner in her private chambers.

Petition, ¶¶ 6-10.

In his Brief, Petitioner raised the following additional claim:

> Under Minn. Stat. § 609.1095, the state must prove that a defendant has two or more prior convictions for violent crimes. Here, however, the state failed to admit evidence of convictions but relied, instead, on copies of complaints and a MNCIS docket sheet. Because the state failed to provide the proper evidence, this court should vacate the enhanced sentence and re-sentence petitioner to the presumptive guidelines sentence. Further, the trial court erred in sentencing petitioner as being a danger to public safety where the prior convictions were old and the recent incident was a domestic dispute initially provoked by the complainant.

Petitioner's Brief, pp. ii, 38-41.  This claim was never presented in the Petition.  Further,

Petitioner addressed additional claims regarding prosecutorial misconduct in his

memorandum of law.  Id., pp. 25-26, 27, 28-30.

## II.     STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a

federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254

of the AEDPA provides that a district court will entertain a petition for writ of habeas

corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, while Petitioner did not explicitly state whether he was proceeding under 28 U.S.C. § 2254(d)(1) or (2), it is evident from the substance of the Petition that he is raising a challenge under 28 U.S.C. § 2254(d)(1).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

5

> A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006).   Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."  May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

By its terms, it is important to remember that § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly established Federal law, as determined by the Supreme Court of the United States.'" O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), overruled on other grounds.  Thus, even if lower federal court decisions support Petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence."  Id.; see also Mark v. Ault, 498 F.3d 775, 784 (2007) ("The decision of the Iowa Court of Appeals will be "contrary to" clearly established federal law if the controlling Supreme Court cases require a "different outcome" or a "particular result.") (citations omitted).  Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' In such circumstances, a federal habeas court then determines whether the

state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence.  This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue.").

With this standard of review in mind, this Court now turns to the Petition.

## III.   DISCUSSION

### A.   Waiver of the Right to Legal Counsel

Petitioner asserted that he was not properly advised of his rights by the trial court before being allowed to waive counsel to ensure that he was able and willing to represent himself.  Petition, ¶ 6.  Petitioner pointed to the fact that the trial court and the prosecution were concerned about his competency to stand trial and noted his alleged bipolar disorder.  See Petitioner's Brief, pp. 14-15.  Petitioner claimed that he did not understand the ramifications of self-representation, as they were never fully explained to him.  Id., p. 15.  In addition, Petitioner argued that the trial court did not obtain a written waiver from him, did not inform him that he might have a defense to the charges or that there might be mitigating circumstances, and did not inform him of all of the other facts essential to a broad understanding of the consequences of waiver – all of which he claimed constituted a failure to comply with the requirements of Minn. R. Crim. P. 5.02. Id., p. 16.

Respondent argued that the state court reasonably applied established federal law when it concluded that Petitioner's election to represent himself was knowing,

voluntary and intelligently.   State's Memorandum in Support of Answer to Petition for Writ of Habeas Corpus, ("Resp. Mem."), pp. 6-7.

During a June 25, 2007 pretrial conference, Petitioner brought a motion to appear pro se in his criminal defense and to discharge his public defender Kurt Knuesel. See June 25, 2007 Pretrial Conference, 2 [Docket No. 17].[3]   Petitioner represented to the trial judge that he had represented himself in previous criminal jury proceedings. Id., p. 3.   The following exchange then occurred:

> THE COURT: Okay, and you know that under the law and the Constitution that you do have a right to a public defender to be paid by public expense, and your attorney has been representing you in that capacity; correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right, what I -- what I need to establish, Mr. Garnett, is that your waiver of counsel is knowing and intelligent. Have you thought about this thoroughly?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right, and you feel that you know what it takes to represent yourself in a jury trial?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You know that it's a pretty formal proceeding and that there are certain things that you have to do. You have to question the jurors -- or you don't have to, but you at least have the opportunity to select your jury.  You have to follow the rules of procedure for direct and cross examination.
>
> THE DEFENDANT: Yes, ma'am.

---

[3]     At the Court's request, Respondent mailed to chambers the transcripts for the pretrial hearings and trial proceedings underlying Petitioner's criminal case. However, Respondent did not file this packet of materials with the Clerk of Court.  Consequently, this Court filed the materials and they are all part of Docket No. 17.

> THE COURT: And there are all kinds of rules, and I have to hold you to the same standard that I hold the state. Are you prepared to do that, Mr. Garnett?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And nobody has pressured you to discharge your attorney or made any promises to you, if you do that, something wonderful is going to happen; is that right?
>
> THE DEFENDANT: No, ma'am. I -- I would like for him to be a stand-by counsel.
>
> THE COURT: Okay.
>
> THE DEFENDANT: if that's appropriate.
>
> THE COURT: All right. All right, did you wish to inquire, Mr. MacLean, about the -- whether this waiver is knowing and intelligent?
>
> MR. MacLEAN: No, thank you, your Honor.
>
> THE COURT: I am prepared to find that Mr. Garnett has thought about this, knows what it takes to represent himself, and is making a knowing and intelligent waiver of his right to counsel. He has asked that Mr. Knuesel be appointed as advisory counsel. That is allowed under our rules of procedure.

Id., pp. 2-4.

At this hearing, attorney Knuesel conveyed his concern that given that trial was scheduled to begin that day and last minute discovery from the State had just arrived with which he had not had a chance to become familiar, he would only be able to provide Petitioner with advice as to trial procedural issues but not trial strategy. Id., p. 5. In response, the trial court stated to Petitioner:

> Well, that presents a kind of dilemma, I guess. I am prepared to appoint advisory counsel, Mr. Garnett. I do have some concerns about the fairness of the process simply because you've got a couple of experienced prosecutors, and you

> may have done this once or twice, but they've done it a lot more than you have. So that is a basis to appoint advisory counsel if the Court has some concerns that the trial will be fair. There's also another basis to appoint advisory counsel, and that's because of the complexity of the trial, and I think that could also be an issue, so on both bases I would be willing to appoint advisory counsel. You do retain the right to decide how to make use of advisory counsel. So if you just want to go back and say how do I ask that question, you know, or to advise about strategy, you can certainly do that, but you also have the right to request that advisory counsel take over your representation during the proceeding; and if you were to do that in the middle of trial, Mr. Knuesel would say that he couldn't do that because he is not ready. So that does present kind of a dilemma.

Id., pp. 5-6.   Petitioner informed the trial judge that he had talked about this with Knuesel and that he was "still ready to proceed," knowing he could use his attorney to only discuss procedural issues and counsel would not be able to step in and take over representation in the middle of the trial.   Id., p. 6.   The prosecution also voiced its concern regarding the lack of a stand-by counsel who could meet all of Petitioner's needs.  Id.  The trial court responded that Knuesel could be given more time to prepare, but that the decision was up to Petitioner.  Id., p. 7.   The prosecution then conveyed its concern regarding Petitioner's capacity to provide a knowing, intelligent and voluntary waiver, referencing a possible Rule 20 evaluation.[4]  Id.  Knuesel asserted that Rule 20 evaluation had not been conducted, as there was no basis for it, and that from his perspective, Petitioner had knowingly and intelligently waived his right to counsel.  Id., p. 8.  The trial was ultimately postponed due to additional complaints asserted against Petitioner and to see if the parties could work on a settlement.  Id., pp. 15-18.

---

[4]     The Court assumes that Rule 20 pertains to Minn. R. Crim. P. 20.01 pertaining to competency proceedings.

On July 25, 2007, the state brought a motion regarding Petitioner's waiver of his right to legal counsel. See July 25, 2007 Motion Hearing, p. 3 [Docket No. 17]. The prosecutor noted that Petitioner had been subjected to mental competency evaluations in the past to determine his ability to assist in his own defense, with the most recent occurring four years earlier, and that in each of those cases he was found to be competent to assist in his defense. Id., p. 4. As to the present case, the prosecutor noted that Petitioner had sent letters to the trial court and the prosecution and submitted a motion that contained admissions as to crimes, which could not be seen as competent representation. Id., p. 5. The prosecutor also indicated that Petitioner continued to call the victim in the case in violation of an order for protection. Id., p. 7. Based on all of these facts, the prosecutor argued that Petitioner was incompetent to assist in his own defense. Id. Petitioner responded to the motion by arguing that he represented himself in three previous matters and was found competent to do so. Id., p. 8-9. Petitioner went on to state:

> My decision this time, your Honor, to defend myself is not because of my incompetency. I am defending myself this time, your Honor, because I felt that I could present a better case and cross examine those witnesses better than Mr. Knuesel could. I'm not taking anything from Mr. Knuesel, he's a damn good attorney, but our understanding and the only reason that I am doing this is because I feel that I can cross examine them better than Mr. Knuesel because I was there and I knew what happened, and I know the lies and everything that's going down.

Id., pp. 9-10.

Petitioner admitted to the trial Court that he had been diagnosed with bi-polar disorder in 1987, but that he had not been on medication since that time, he did not need any medication, and he was not seeing a doctor. Id., p. 11-12. He re-emphasized

that he did not have a mental condition and he felt as though this was a ploy by the prosecution to delay the trial in order to find more evidence. Id. While the trial judge expressed concern regarding Petitioner's ability to defend himself because he was not an attorney, the trial judge believed that Petitioner was competent to represent himself:

> I am worried about you because you are doing things that prejudice you. Some of the things you've said in your letters are prejudicial to you. Now that can be for a couple of reasons. It could be because somebody isn't competent. It could just be that they don't understand what the law is. We have what I think a lot of us would see as a disturbing trend for people to represent themselves, and it's disturbing because a lot of times they don't come up with good results just because they're not lawyers. It's hard to represent yourself, and it's hard to know what the laws are, and it's hard--I mean people are in school for three, four years to figure it all out. I'm very afraid that you are going to end up with a result that you don't like. Maybe you would whether you're represented by an attorney or not, but I'm very concerned that you are going to prejudice yourself and end up being convicted whereas you would have a better chance, I think, with an attorney. On the other hand, I think there's a question here of what we mean by competency. I think that a lot of the people that have come in here who are pro se people are in the same situation as Mr. Garnett. They're prejudicing themselves all over the place because they don't know what the law is; they don't know what the rules are; they do things that are not incompetent but unwise because they're uneducated in the law. I have had Mr. Garnett before me many times, and I've never had reason to doubt his competency. I have reason to doubt his wisdom and his knowledge of the law, but I've never had reason to doubt his competency. I agree that Mr. Garnett may prejudice himself, that he's not a lawyer, and he may end up with a bad result, but I don't think there's enough reason to doubt his competency to stay any of these proceedings.

Id., pp. 13-15.

Nevertheless, despite the trial judge's belief that Petitioner was competent, given his past bipolar diagnoses and his lack of treatment, she erred on the side of caution and ordered  mental evaluation for Petitioner.  Id., pp. 17-18.

In August 2007, John Johnson, Ph.D., a psychologist, filed a psychological evaluation report in which he found that Petitioner was "competent and would be able to cooperate with defense counsel. He can understand the criminal proceedings and can participate in his defense." Briggs, 2009 WL 1444026 at *2.  The finding that Petitioner was "competent to proceed" was based on Dr. Johnson's findings on an examination conducted by him and the results of two psychological tests performed on Petitioner.  Id.

The Sixth Amendment provides criminal defendants with the right to counsel, as well as the right to waive counsel and proceed pro se.  United States v. Ladoucer, 573 F.3d 628, 633 (8th Cir. 2009) (citing Faretta v. California, 422 U.S. 806, 807 (1975)). "An accused has a constitutional right to self-representation but must knowingly, intelligently, and voluntarily waive the right to counsel." Wilkins v. Bowersox, 145 F.3d 1006, 1011 (8th Cir. 1998), cert. denied 552 U.S. 1094 (1999) (citing Faretta, 422 U.S. at 819-21); see also Edwards v. Arizona, 451 U.S. 477, 482 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ("[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'"); see also Godinez v. Moran, 509 U.S. 389, 400 (1993) ("a defendant choosing self-representation must do so competently and intelligently")

(marks and citation omitted). "Warnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." Iowa v. Tovar, 541 U.S. 77, 89 (2004).

In Godinez, the Ninth Circuit determined the competency standard for pleading guilty or waiving the right to counsel is higher than the competency standard for standing trial. 509 U.S. at 394. The United States Supreme Court rejected "the notion that the competency standard for pleading guilty or waiving the right to counsel is higher (or even different from)" than the competency standard for standing trial.[5] Id. at 398. The Supreme Court noted that it did not believe that a "defendant who waives his right to the assistance of counsel must be more competent than a defendant who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights." Id. at 399. The Supreme Court went on to find that that "when a defendant seeks to waive his right to counsel, a determination that he is competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted." Id. at 401-02 (citing Westbrook v. Arizona, 384 U.S. 150 (1966) (per curiam)).

Subsequently, in Indiana v. Edwards, 554 U.S. 164 (2008), relied upon by Petitioner (Petitioner's Mem., pp. 13-14), the defendant had been found incompetent to stand trial due to his illness of schizophrenia and was committed to a state hospital. Id.

---

[5]     The Supreme Court has concluded that, "the standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" Godinez, 509 U.S. at 396 (quoting Dusky v. United States, 362 U.S. 402 (1960) (per curiam). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." Id. at 401 n. 12.

at 167-68.  Approximately seven months later, the hospital reported that the defendant's condition had again improved to the point that he had become competent to stand trial. Id. at 168.  Trial occurred a year later and prior to the start, the defendant asked to represent himself and for a continuance.  Id.  The trial court denied the continuance and the defendant proceeded to trial with representation.  Id. at 168-69.  The defendant was later re-tried on some of the charges against him and he again made a request for self-representation, which was denied by the trial court on the basis that the defendant still suffered from schizophrenia and that while he was competent to stand trial, he was not competent to represent himself.  Id. at 169.  The defendant was convicted and he appealed, asserting that the trial court's refusal to permit him to represent himself at his re-trial deprived him of his constitutional right of self-representation.  Id.  The state supreme court ordered a new trial based on United States Supreme Court precedent in Faretta and Godinez.  The Supreme Court vacated the state judgment and remanded the case for further proceedings not inconsistent with its opinion.  In doing so, the Supreme Court held:

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves

Id. at 178-79 (emphasis added).  "[T]he trial judge ... will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant."  Id. at 177.

In this case, the Minnesota Court of Appeals found that Petitioner intelligently and voluntarily waived his right to counsel.  Briggs, 2009 WL 1444026 at *2-4.   In reaching this conclusion, the appellate court first addressed Petitioner's contention that the trial court's determination of competence should be overruled based on Indiana v. Edwards.

> Briggs also contends that the district court's determination of competence was inadequate because the Supreme Court's recent decision in Indiana v. Edwards, --- U.S. ----, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), requires trial courts to examine competence for purposes of waiving the right to counsel more stringently than competence for purposes of standing trial. We do not construe Edwards in the manner urged by Briggs. First, the trial court in Edwards had refused to permit the defendant to represent himself. Id. at 2383. The issue on appeal was "whether the Constitution permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial." Edwards, 128 S.Ct. at 2385-86 (emphasis added). Here, neither the prosecution nor the district court imposed any such limitations on Briggs. Second, Briggs's argument is in direct conflict with Godinez, where the Supreme Court held that trial courts are not required to conduct bifurcated competency evaluations. See Godinez, 509 U.S. at 399, 113 S.Ct. at 2686-87. The Edwards Court did not purport to overrule Godinez and specifically stated that the question before it was different from the issue addressed in Godinez, 128 S.Ct. at 2385.

Briggs, 2009 WL 1444026 at *3.

The Court of Appeals then determined that Petitioner intelligently and voluntarily waived his right to counsel based on the fact that Petitioner had represented to the trial court that he usually represents himself in criminal proceedings; he had discussed his decision to proceed pro se with his defense attorney; he had made the decision to proceed pro se for strategic reasons; the trial court had cautioned him about the disadvantages of proceeding pro se and deferred ruling on his request; at a later

16

hearing, he stated he carefully considered his decision to proceed <u>pro</u> <u>se</u> and he was comfortable proceeding alone based on his previous experience of representing himself in jury trials; he understood that the district court would hold him to the same standard as an attorney; and no one had pressured him or induced him to discharge his attorney. <u>Id.,</u> at *3-4.

This Court finds that the state court's resolution of Petitioner's competency claim was not contrary to, nor did it involve an unreasonable application of, the decisions of the United States Supreme Court.

The <u>Edwards</u> decision stands for the proposition that "the Constitution <u>permits</u> [s]tates to insist upon representation by counsel" for certain individuals who are not competent to represent themselves; not that it mandates states to do so. <u>Edwards</u>, 554 U.S. at 178 (emphasis added); <u>see</u> <u>also</u> <u>United States v. Berry</u>, 565 F.3d 385, 391 (7th Cir. 2009) (addressing <u>Edwards</u> and finding "[t]he Constitution may have allowed the trial judge to block his request to go it alone, but it certainly didn't require it.") (citation omitted).  <u>Edwards</u> did not address the scope of a state court's analysis when determining whether to allow a defendant to represent himself; rather, it placed a great deal of discretion in the hands of the trial judges who it believed are in the best position to make "more fine-tuned mental capacity decisions." <u>Edwards</u>, 554 U.S. at 177.  In the end, "[b]efore permitting a defendant to waive counsel, the trial court must be satisfied that the defendant <u>is competent to stand trial</u>." <u>United States v. Turner</u>, 644 F.3d 713, 721 (8th Cir. 2011) (citing <u>Godinez</u>, 509 U.S. at 400) (emphasis added).

Here, unlike Edwards, who was suffering from schizophrenia at the time of his trial, Petitioner is relying on a diagnosis of bi-polar disorder in 1987, for which he had

not received any treatment since 1987, to assert that he was not competent to represent himself 20 years later during his 2007 trial.   Further, unlike Edwards, Petitioner had been found competent in previous criminal matters.   In any event, the trial judge in this case, while believing that Petitioner was competent to represent himself, took the prudent step to have Petitioner's competency evaluated.   This psychological evaluation demonstrated that Petitioner was competent to proceed and he could understand the criminal proceedings and could participate in his defense.   The fact that Petitioner did not prove to be adequate in terms of properly representing himself is of little consequence, as the "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Godinez, 509 U.S. at 399; see also Faretta, 422 U.S. at 834 (noting that it is "undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."); Tovar, 541 U.S. at 89 (noting that "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation.") (internal quotation marks and citation omitted); Turner, 644 F.3d at 721 ("the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.") (marks and citations omitted).   Indeed, a defendant's "technical legal knowledge" is "not relevant to an assessment of his knowing exercise of the right to defend himself." Faretta, 422 U.S. at 836.

This Court finds that based on the facts of this case, including the background and experience of Petitioner, that he made a knowing and voluntary waiver of counsel. During a pretrial conference, Petitioner brought a motion to appear pro se in his criminal

defense and to discharge his public defender.  Petitioner represented to the trial judge that he had represented himself in several previous criminal jury proceedings.  The trial court asked him whether he knew that he had a right to a public defender, whether he had thought about giving up his attorney and whether he felt he had was capable of representing himself at trial.  Petitioner stated that he knew about his rights, he had given thorough thought to representing himself, and he was capable of representing himself.  The trial judge warned Petitioner that trial was a formal proceeding; he would have to question jurors, select a jury, follow the rules of procedure for direct and cross examination; and there were many rules that he would have to follow.  The trial court also asked if anyone had pressured Petitioner to discharge his attorney or made any promises to him to give up his right to counsel.  Even when confronted with the fact that his advisory counsel could only assist him with procedural issues, Petitioner insisted that he was still ready to proceed.  Further, when later challenged by the prosecution as to his competency to waive his right to counsel, Petitioner reiterated that he wanted to defend himself because he felt that he could present a better case and cross-examine witnesses better than his counsel as he was there at the scene of the crime and knew what happened.  Petitioner acknowledged that he knew he had the right to counsel, was repeatedly asked if he truly wanted to waive his right and was able to represent himself, and was warned of the responsibilities and difficulties of proceeding pro se.

Given the inquiry conducted, the warnings given by the trial court and Petitioner's past experience representing himself, the Court finds that Petitioner knowingly and voluntarily waived his right to legal counsel.  See Jones v. Norman, 633 F.3d 661, 663 (8th Cir. 2011) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)) ("The amount of

information a court needs to provide to a defendant and the amount of inquiry the court is required to make to test the defendant's understanding depends on the background, experiences, and conduct of the accused.").

As for Petitioner's claim that the trial court should have obtained a written waiver from him, there is no such requirement.[6]  More to the point, since there is no indication that Petitioner did not understand the verbal warnings and questions propounded by the trial court, the Court finds that a written waiver form was not necessary.

Finally, Petitioner's claim that the trial court failed to comply with the requirements of Minn. R. Crim. P. 5.02,[7] is not a matter that this Court can address.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

---

[6]    The Court notes that even with a written waiver, there is no indication that Petitioner would have not still elected to proceed pro se.

[7]    Rule 5.02 provides:

> A defendant is disabled in communication if, due to a hearing, speech or other communications disorder or difficulty in speaking or comprehending the English language, the defendant cannot fully understand the proceedings or any charges made, or is incapable of presenting or assisting in the presentation of a defense.

> If a defendant is disabled in communication, the judge must appoint a qualified interpreter under Rule 8 of the Minnesota Rules of General Practice for the District Courts to assist the defendant throughout the proceedings. The proceedings that require a qualified interpreter include any proceeding attended by the defendant.

Minn. R. Crim. P. 5.02.

For all of these reasons, this Court finds that the state court's decision regarding Petitioner's competency to represent himself at trial was not contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court.   On this basis, the Court finds that Ground One of the Petition should be dismissed.

### B.   Admission of Past Bad Acts

Ground Three of the Petition states:

> Petitioner was denied prior to the admission of evidence of defendant's past bad acts and during the final jury instructions, a trial court should sua sponte caution the jury not to convict the defendant for these past acts.  Here, the trial court admitted, a harassment restraining order, which listed allege bad acts of petitioner, as "relationship evidence" without any cautionary instructions.

Petition, ¶ 8.

As a preliminary matter, the Court notes that there is no indication that this claim was presented to the state appellate courts for consideration.  See Briggs, 2009 WL 1444026.  A federal constitutional claim is reviewable in a § 2254 habeas corpus proceeding only if that claim was first fairly presented to, and decided on the merits by, the highest available state court.  The United States Supreme Court has explained this requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "opportunity to pass upon and correct" alleged violations of its prisoner's federal rights…to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts…state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

"When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in Rhines v. Weber, [544 U.S. 269]…(2005)." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006).  However, when a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim is not truly "exhausted," but, rather, it has been "procedurally defaulted."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall, 114 F.3d at 757.  In other words, if there is still a state court remedy available, a previously unraised habeas claim is "unexhausted," but if there is no state court remedy still available, then the claim is "procedurally defaulted."  See Armstrong, 418 F.3d at 926 ("if no state court remedy is available for the unexhausted claim-that is, if resort to the state courts would be futile-then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim….'") (quoting Gray v. Netherland, 518 U.S. 152, 162

(1996); see also Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006) ("If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'"), cert. denied, 549 U.S. 1134 (2007) (quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc), cert. denied, 517 U.S. 1215 (1996)).

A claim that has been procedurally defaulted cannot be entertained in a federal habeas corpus proceeding unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to answer the claim." Coleman, 501 U.S. at 750.

"'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him. . . . For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials'…made compliance impracticable, would constitute cause under this standard.'" Coleman, 501 U.S. at 753 (citations omitted). To demonstrate prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" U.S. v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original); see also Carroll v. Schiro, 243 F.3d 1097, 1102 (8th Cir. 2001) (same); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (same); Jennings v. Purkett, 7 F.3d 779, 782 (8th Cir. 1993) (same).

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that a 'constitutional violation has probably resulted

in the conviction of one who is <u>actually innocent</u>.'"  <u>Brownlow v. Groose</u>, 66 F.3d 997,

999 (8th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 1161 (1996) (quoting <u>Schlup v. Delo</u>, 513

U.S. 298, 327 (1995) (emphasis added)).   In other words, a petitioner cannot simply

point to errors that allegedly occurred during the course of his criminal prosecution; he

must instead offer some <u>new</u> evidence which affirmatively demonstrates that he is, in

fact, innocent of the crime for which he was convicted.

Assuming that Petitioner did not present Ground Three to the Minnesota Court of

Appeals or Minnesota Supreme Court, the Court finds he has procedurally defaulted on

the claim.   This is because he is precluded from returning to state court to raise a

federal constitutional claim after a direct appeal where there is no evidence that his

federal claims were unknown or were so novel that their legal basis was unknown at

time of the direct appeal.  <u>See</u> <u>McCall</u>, 114 F.3d at 757-58 (citing <u>State v. Knaffla</u>, 243

N.W.2d 737, 741 (Minn. 1976) (concluding that once Petitioner has directly appealed his

sentence "all matters raised therein, and all claims known but not raised, will not be

considered upon a subsequent petition for post-conviction relief).

Additionally, the Court has no evidence of cause or prejudice for his procedural

default regarding this "bad acts" claim.   There is no evidence that the factual or legal

basis for this claim was not reasonably available to Petitioner or that someone interfered

with his ability to assert the constitutional arguments he made in his petition for habeas

corpus relief.  <u>See</u> <u>Coleman</u>, 501 U.S. at 753.   Finally, Petitioner did not provide any

new evidence to suggest his innocence to establish that the Court should apply the

"fundamental miscarriage of justice" exception in this case.  <u>See</u> <u>Groose</u>, 66 F.3d at

999. Therefore, based on Petitioner's failure to exhaust Ground Three, it should be dismissed.

Nevertheless, because this Court was not presented with Petitioner's briefs to the Minnesota Court of Appeals or Minnesota Supreme Court, the Court will briefly address Ground Three.

In his memorandum, Petitioner claimed that the trial court admitted a harassment restraining order, which listed alleged bad acts by him, as "relationship evidence" without any cautionary instruction. See Petitioner's Mem., p. 31. According to Petitioner, while a trial court has discretion to admit evidence of similar conduct by an accused against victim of domestic abuse, when the evidence is admitted and again in the final charge, the trial court should give an instruction cautioning the jury not to convict the defendant for his past acts. Id. (citing State v. Meldrum, 724 N.W.2d at 15, 21 (Minn. Ct. App. 2006); State v. Bauer, 598 N.W.2d 352, 365 (Minn. 1999); State v. Williams, 593 N.W.2d 227, 237 (Minn. 1999)). Petitioner asserted that such an instruction should have been given regardless of whether it was requested by the parties. Id., pp. 31-32 (citing 10 Minn. Practice, CRIMJIG 3.16 ("Testimony as to Other Crimes") (5th ed. 2006.); State v. Meldrum, 724 N.W.2d at 15, 21 (Minn. Ct. App. 2006); State v. Billstrom, 149 N.W.2d 281, 285 (Minn. 1967)). Petitioner acknowledged that under Minnesota law, the failure to provide a cautionary instruction is not automatically reversible error, but it may constitute plain error entitling him to a new trial. Id., p. 32 (citing State v. Williams, 593 N.W.2d 227, 237 (Minn. 1999); State v. Frisinger, 484 N.W.2d 27, 31 (Minn. 1992); Meldrum, 724 N.W.2d at 22; Williams, 593 N.W.2d at 237). According to Petitioner, under the "plain error" standard, this Court must determine

whether there is (1) error; (2) that is plain, in that it is clear and obvious; (3) that affects the defendant's substantial rights; and (4) whether it should address the issue in order to "ensure fairness and the integrity of the judicial proceedings. Id. (citing State v. Baird, 654 N.W.2d 105, 113 (Minn. 2002); Griller, 583 N.W.2d at 741).  Petitioner argued that the Court should not simply take the prosecution's stated purpose for the admission of other - acts evidence at face value and instead, the court should follow the clear wording of Minn. R. Evid. 404(b) and look to the real purpose for which the evidence is offered, ensure that the purpose is one of the permitted exceptions to the rule's general exclusion of other acts evidence and balance the probative value of the evidence against the potential unfair prejudice.  Id., p. 33 (citing Minn. R. Evid. 404(b); State v. Ness, 707 N.W.2d 676 (Minn. 2006); State v. Frisinger, 484 N.W.2d 27, 32 (Minn. 1992)).  As for the order for protection that was admitted at the trial, Petitioner maintained that it had no relevance to the case as it was obtained after the crime at issue and did not prove or disprove any elements of the charged offense, and as such, a failure by the trial court to provide a cautionary instruction to the jury was prejudicial, in error and affected the jury's verdict.  Id., p. 34 (citing State v. Goelz, 743 N.W.2d2d 249, 256-257 (Minn. 2007)).

Respondent argued that Petitioner's claim regarding the cautionary instruction was a state evidentiary issue decided on independent state grounds and is therefore barred from this Court's review.  See Resp. Mem., p. 9.

"[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the

26

United States."  28 U.S.C. § 2254(a).  The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  Estelle, 502 U.S. at 67-68; see also United States v. Armstrong, 554 F.3d 1159, 1166 (8th Cir. 2009) cert. denied, 129 S.Ct. 2805 (2009) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.") (quoting Smith v. Phillips, 455 U.S. 209, 221 (citations omitted)).

Because Petitioner's claim does not present any issue based on the federal Constitution, and is exclusively based on Minnesota rules and case law, the Court finds that this claim should be dismissed.

## C.   Vouching by Prosecution

In Ground Four of the Petition, Petitioner asserted that he was deprived of a fair trial where the prosecutor vouched for the victim and implied to the jury that the victim had been prevented from standing up to Petitioner during an alleged "ten year reign of terror" for which Petitioner was not on trial.  Petition, ¶ 9.  In particular, Petitioner argued that the prosecutor invited the jury to convict him of a non-charged offense involving an alleged ten-year reign of terror, instead of whether Petitioner had committed the charged offense, and improperly diverted that attention to the witnesses' characters and bravery in going against Petitioner.  See Petitioner's Mem., pp. 22-25.

The Respondent argued that the prosecutor's comments during closing argument was not a due process violation, as the comments were based on the evidence.  See Resp. Mem., p. 7.

The Minnesota Court of Appeals rejected Petitioner's claim, stating:

> Briggs contends that the prosecutor improperly vouched for the credibility of the state's witnesses in his closing argument. The prosecutor stated to the jury: "You also heard from [L.E.'s daughter]. She told you about what she experienced. She also told you about watching as this defendant smashed her brother in the face when she was just ten years old, and she courageously told you what she felt about that." "A prosecutor may not personally endorse the credibility of witnesses." State v. Fields, 730 N.W.2d 777, 785 (Minn. 2007) (quotation omitted). But the prosecutor's statement about L.E.'s daughter was not an endorsement of her credibility. Briggs was on trial for domestic assault, terroristic threats, second-degree assault, and harassment. The state's theory was that Briggs had an abusive and controlling relationship with his girlfriend and her family. The prosecutor's reference to the daughter's courage in testifying was based on evidence that Briggs had assaulted and threatened the witnesses. Thus, the prosecutor did not commit error. See State v. McArthur, 730 N.W.2d 44, 54 (Minn. 2007) (holding that prosecutor did not vouch for credibility of witnesses by referring to "safety risk" in testifying against defendant).

Briggs, 2009 WL 1444026 at *4.

Prosecutorial misconduct occurs when a prosecutor vouches for the credibility of a witness.  United States v. Young, 470 U.S. 1, 18-19 (1985); Lawn v. United States, 355 U.S. 339, 359-60 n. 15 (1958).   "Improper vouching may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness."  United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998) (citing United

States v. Beasley, 102 F.3d 1440, 1449 (8th Cir.), cert. denied, 520 U.S. 1246 (1997));

see also United States v. Mullins, 446 F.3d 750, 760 (8th Cir. 2006), cert. denied, 549

U.S. 923 (2006) ("Improper vouching occurs when a prosecutor refers to facts outside

the record, implies that a witness's testimony is supported by facts not available to the

jury, gives an implied guarantee of truthfulness, or expresses a personal opinion

regarding witness credibility.") (citation omitted).

      The alleged offending testimony elicited by the prosecutor from the victim was as

follows:

> Q     Is that the only incident of domestic violence that's
> been meted out by this defendant against you?
>
> A     I believe there was one in Minneapolis, Minnesota.
>
> Q     Can you describe that one for the jury, please.
>
> A     It was (sic) I believe a few hours after his birthday we
> get into it. He hits me and I swell my eye up. That night my
> son was trying to get him off me, and he turned around and
> belted by son in the mouth and split his mouth open, and he
> had to have stitches. We both went to the emergency room.
>
> Q.    Which son was that?
>
> A.    That was [XXXX XXXX].
>
> Q.    Was the defendant prosecuted for that?
>
> A     No.
>
> Q     Was it reported to law enforcement?
>
> A.    Yes.
>
> Q     And it was charged; is that right?
>
> A     Yes, but I never went through with it.
>
> Q     Let me ask about that. Why not?

A      Kind of fear, manipulation. Always made me feel like I was the one to cause all the problems. It was always my fault.

Q      I'm sorry, but we have to go through this. How did he do that?

A      Calling, just plead the Fifth, you know. If you wouldn't do things, I wouldn't have to hit you. If you just listen to what I say and do what I say, you know, it wouldn't -- none of this ever happen. It's a constant every-time thing with that.

Q      And are you able to see through that? What he's trying to do and fight against that, or sometimes in the past it's been hard to do that?

A      Yes, it's hard to do it right now but.

Q      What made you come in today to testify before these people?

A      Cuz I'm tired. I deserve better. I want a better life for me and my kids.

Q      Do you know what made the difference for you this time? To want to cooperate with the prosecution and be done with it?

A      Cuz he actually physically put his hands on my kid and threatened to kill them. I mean, it's not all right to beat me but not my kids because you're not the father of neither one of them.

* * *

Q      When the defendant said, "I'll kill all y'all motherfuckers up in here", what are you thinking at that time?

A      The rage he was in I believe he would have did it.

Q      Did you believe your life was in danger?

A      Yes, I did.

Q      Did you believe your children's lives were in danger?

A      Yes.

Q      <u>In making that -- and having that feeling is part of it</u>
<u>that you have the whole history of violence at the hands of</u>
<u>this defendant?</u>

A      Well, there's fear, yes.

Transcript of Trial ("Tr.") 153-54, 160-61 (emphasis added) [Docket No. 17].

The portions of the closing argument by the prosecutor that the Petitioner is

challenging were as follows:

> MR. MacLEAN: I'm just going to start peeling heads up in
> here. Peeling the heads up in here. That's his voice talking
> to his family bragging about what he had done to <u>these three</u>
> <u>wonderful people</u>. Peeling heads.  Great bodily harm. You'll
> read to that measurement. He used the bat to threaten great
> bodily harm or death to all three of the victims.
>
> Another crime you'll have an opportunity to review is the
> crime of harassment of a minor. Defendant directly or
> indirectly manifested a purpose or intent to injure that other
> person or the rights of that other person. Because it has to
> do with minors this is just as to [XXXX] and [XXXX]. It has to
> have been done by the commission of an unlawful act like
> assaulting somebody, like assaulting them with a dangerous
> weapon or not with a dangerous weapon. Push is enough.
> Threat is enough. The defendant knew this is important. The
> defendant knew or had reason to know that the conduct
> would cause the victims under the circumstances to feel
> frightened, terrorized, oppressed, persecuted, or intimidated
> or anyone of those. They were all five of those and more
> besides.
>
> It's not jeez that might happen, or that's going to be the
> natural consequence. He wanted them to feel terrorized. He
> wanted to have control over them. That's the whole reality of
> that night. Power over. Power over this. The victim obviously
> felt all these  things and more. They felt they were going to
> lose their lives on or about the same date, and in order to
> convict on that you'd have to believe that beyond a
> reasonable doubt as to each of those elements, and the

victim was under eighteen and the defendant was at least more than 36 months older than the victim.  His date of birth is in the record. The kids are sixteen and thirteen.

So James Garnett. That's who you've met here from afar in court. You've seen a good bit about how he acts, about how he seeks to have control, about how he tries to grab and wrestle control away from other people.

(Excerpt 3D played for the jury:

MR. GARNETT: So I'm gonna tell you when you talk to that man, I'm gonna let you know now I don't know  what the fuck you gonna say to him, but whatever you say to him you I don't know what the fuck but like I don't know baby. Just plead the whatever. You still pleading the Fifth or what? I don't know. But I tell you whatever you say to him, it better not be too hard. But XXXX and them will be gone anyway, ain't it?

End of Excerpt 3D.)

MR. MacLEAN: When are they leaving, so they can't be here to testify. Why don't you just go in and plead the Fifth or don't say anything at all. Then I can walk. Consciousness of guilt. <u>I'm guilty so what I want to do is eliminate the witnesses. Send some off to somewhere else and intimidate, push, and pull, and drag the adult, Lois, through the same cauldron of hurt and  pain and intimidation that she's lived through for ten years. He damn near made it work too</u>.

(Excerpt 3A played for the jury:

MR. GARNETT: Don't talk crazy to the man.

MS. ESCHO: To who?

MR. GARNETT: You know he going to call you sooner or later.

MS. ESCHO: As long as he don't say nothing that I don't like.

MR. GARNETT: All you gotta do is, like, to the man is I'm pleading the Fifth. I don't -- that's it. Don't keep talking to him. I mean, you know how to talk to him. Just don't get crazy. Don't get crazy. That's all.

End of Excerpt 3A.)

MR. MacLEAN: He's calling out from inside the jail to try to manipulate them to try to control them. Even from inside the jail telling them what to do, when to leave, when to come back, what to say, what not to say, to whom to say it. You're meeting James Garnett.   They'll take your kids away remember? Well, what would he threaten me with? They'll take your kids away.   They'll put me in jail. They'll even put the kids in jail. They'll have misdemeanors. Why don't you send the kids away.

(Excerpt 3J played for the jury:

MR. GARNETT: Because if -- if -- if the kids go to -- if the kids go to Gary if they go there, that's eight charges gone. I won't have to worry about those. You see what I'm saying? Them eight'd be done because they got no witness or nothing for that. And they can't-- they can't do nothing about that. That's eight of 'em gone. Then it would only be the terroristic threat and the fear of a domestic assault, and them only two – them the only two charges that you got with your name on it.  The rest of 'em the other eight are for the children.

Okay.

End of Excerpt 3J.)

MR. MacLEAN: The eight charges for the kids would go away cuz they'll be in Gary, Indiana. That's great because if they come in, I'm toast. Send them off to Gary. Keep them off the witness stand. But who came in here courageously and told you what happened? [XXXX] and [XXXX]. They told you. They were manipulated. Finally, after all the years they weren't manipulated into silence. They weren't manipulated into fleeing. They got the courage to come in here, and you

know they had to look at him a couple of times when he was asking questions. <u>Took a lot of courage</u>.

* * *

MR. MacLEAN: Ladies and gentlemen, thank you so much for serving your civic duty. Sorry for any role I played in delaying from time to time. Don't hold that against the State in this case. What needs to happen here is the justice. The justice for those three people <u>who got enough courage to come before you to end the reign of terror and the reign of fear and the reign of control</u>. Your job is to apply the facts to the law. Do so and convict him of everything he's facing because he did it all. Thank you.

Tr. 620-24, 627 (emphasis added).

In <u>United States v. Bentley</u>, 561 F.3d 803 (8th Cir. 2009), <u>cert.</u> <u>denied</u> 130 S.Ct. 175 (2009), the issue was whether the following testimony amounted to vouching of witness credibility:

[Y]ou have to decide whether you believe these witnesses by a preponderance of the evidence. Is it more likely than not that those witnesses were telling the truth? And I submit that it is more likely that they were telling the truth, <u>because consider how hard it is to come into a courtroom like this and tell a story like that</u>. Why would they come in here to tell that story if it wasn't true?

<u>Id.</u> at 814 (emphasis added).   The Eighth Circuit concluded that the prosecutor's argument focused on credibility evidence and the jury's role in determining credibility, not the prosecutor's personal opinion of the witnesses' credibility." <u>Id.</u> at 814 (citation omitted); <u>see</u> <u>also</u> <u>United States v. Coutentos</u>, 651 F.3d 809, 822 (8th Cir. 2011) (concluding that a statement by the prosecutor that it was "very, very difficult and hard for these girls to come in and testify" did not amount to impermissible vouching, as the government's argument left the issue of witness credibility to the jury, suggesting one answer that relied on evidence that was known to the jury.").

34

Similarly, this Court finds that nothing about the testimony elicited or the closing statements at issue by the prosecution amounted to vouching for the credibility of a witness.  At most, the prosecutor left the issue of the witness credibility to the jury, suggesting that it was credible based on the reasonable inferences of the evidence in the record.

As for the statements regarding Petitioner's "reign of terror," the victim testified that she had suffered "a lot of abuse" and domestic violence over the nine years she has had a relationship with Petitioner.  Tr. 151-153.  While the prosecutor may have used colorful language, the statement by the prosecutor was based on the evidence in the record and was not improper.  See United States v. Hawkins, 548 F.3d 1143, 1147 (8th Cir.), cert. denied 129 S.Ct. 2757 (2009) (quoting United States v. Eagle, 515 F.3d 794, 805 (8th Cir. 2008)) ("'A prosecutor must limit the closing argument to the evidence and the reasonable inferences that may be drawn from it.'").

As for the testimony elicited from the victim regarding why she decided to press charges in this case and the background of Petitioner's history of abuse, this testimony was relevant to the issue of the victim's credibility and provided context as to why the victim feared Petitioner the day he made threats to her and her family.  Thus, the Court finds nothing improper regarding this line of questioning and testimony.

For all of these reasons, this Court finds that the state court's decision regarding Petitioner's claim that the prosecutor improperly engaged in vouching was not contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court.  Therefore, Petitioner's Third Ground relating to vouching should be dismissed.

### D.    Petitioner's Presence During the Proceedings

In his Fifth Ground, Petitioner claimed that he was deprived of his constitutional right to be present during all critical phases of trial, including when the trial court excluded him from an in-chambers conference because the court preferred not to have him in her private chambers.  Petitioner asserted that he was improperly excluded from a key in-chambers conference on how to handle the possible misconduct of a juror because the trial judge was reluctant to have Petitioner in her chambers without any security.  See Petitioner's Mem., p. 35.  Petitioner maintained that having standby counsel appear in his stead was improper, given that the attorney was not representing Petitioner and there was no waiver by Petitioner on the record regarding allowing counsel to step in and represent Petitioner.  Id., pp. 35-37.

Respondent argue that Petitioner's right to be present was adequately protected by Minnesota law.  Resp. Mem., pp. 9-10.

On this issue, the Minnesota Court of Appeals held as follows:

> In this case, there is no denial of Briggs's right to be present because the district court did not conduct any meaningful proceedings in chambers in Briggs's absence. Rather, the district court moved the conference to the courtroom in response to Briggs's wish to be present. The discussion that occurred in chambers before moving to the courtroom was entirely administrative in nature as the district court, the prosecutor, and stand-by counsel discussed where the examination of the juror should occur. The juror was not examined outside Briggs's presence. Thus, the district court did not deny Briggs his right to be present at trial.

Briggs, 2009 WL 1444026 at *8.

While a defendant has a constitutional right to be present at every stage of his trial, such a right is not absolute.  United States v. Barth, 424 F.3d 752, 762 (8th Cir.

2005) (citing U.S. Const. amend. VI; <u>Illinois v. Allen</u>, 397 U.S. 337, 338 (1970); <u>United States v. Shepherd</u>, 284 F.3d 965, 967 (8th Cir. 2002)).   Indeed, a "defendant's presence is not required at a conference regarding trial procedure." <u>Id.</u> (citing <u>Cox v. United States</u>, 309 F.2d 614, 616 (8th Cir. 1962)).

In this case, the trial court asked stand-by counsel, Knuesel, to ask Petitioner if it was acceptable for Knuesel to come back to the judge's chambers to address an issue. Tr. 345.  The trial judge was reluctant to have the defendant in chambers without any security.  <u>Id.</u>  Knuesel represented to the trial court that Petitioner had authorized him to attend the conference to just listen and to report back to him, leaving any further decisions to Petitioner.  Tr. 345-46.  During the conference, the trial judge reported that there was reason to believe that a juror had read a newspaper article about the case and wanted to inquire on how to handle the procedure of questioning the juror.  Tr. 346-48.  Knuesel told the trial judge that he needed to ask Petitioner on how he wanted to proceed in questioning the juror.  Tr. 347-49.  Subsequently, Knuesel reported that Petitioner was fine with having him represent him during the questioning of the juror but preferred having the court closed and having the juror questioned in front of Petitioner. Tr. 349-50.  Ultimately, the courtroom was closed and Petitioner was allowed to be present during the questioning of the juror.  Tr. 353.  The trial court gave Petitioner an opportunity to question the juror, however, Petitioner declined.  Tr. 356.

The conference at issue dealt with procedural issues regarding how to proceed with questioning a juror, the content of the discussions were conveyed to Petitioner by his advisory counsel, and Petitioner was able to give his feedback through advisory counsel.  Ultimately, the substantive issue of questioning the juror was done in front of

Petitioner and he had the opportunity to participate.   Given that the nature of the proceeding was procedural and the juror was examined in his presence, the Court concludes that Petitioner was not precluded from participating in his trial proceedings. Therefore, the state court's decision regarding this issue was not contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court, and Ground Five should be dismissed.

### D.   Additional Claims Not Listed in Petition

In his memorandum of law, Petitioner asserted what appear to be additional claims that were not listed in his Petition.  These include: the trial court allowed hearsay evidence to be considered in conjunction with his enhanced sentence under Minn. Stat. § 609.1095; the prosecutor improperly denigrated his right to self-defense by asserting to the jury that he was representing himself so he could exert control; the prosecutor improperly told the jury that he had much more evidence concerning Petitioner's harassment by stating that he possessed 300 phone calls; the prosecutor improperly elicited testimony concerning Petitioner's "prior contacts with people" and the record showed he had aliases; and the prosecutor used his prosecutorial charging authority in an abusive manner.  See Petitioner's Brief, pp. 4, 25-30, 38-41.

Respondent did not address these other claims.

Under Rule 2 of the Rules Governing Section 2254 Cases in the United States District Court, a "petition must: (1) specify all the grounds for relief available to the petitioner. . . ."  (emphasis added).  The purpose of such a requirement is obvious;  It provides a respondent and the court notice as to what is at issue in the case.  Indeed, in this case, the Respondent did not address any of the claims in Petitioner's

memorandum of law that were not identified in his Petition.  The Court acknowledges

that Petitioner that his rights to "Due Process Rights were violated where the Court and

the prosecutor gained unfair [sic] over pro-se petitioner," (see Petition, Paragraph 7)

however, such a claim provides no information so as to allow the Respondent to

determine the basis for the claim.  As such, the Court finds that because Petitioner

failed to describe these claims in his Petition, these claims should be dismissed on this

basis alone.

However, for completeness, the Court will briefly analyze the merits of these

claims.[8]

### 1. Evidence Considered in Conjunction with his Enhanced Sentence under Minn. Stat. § 609.1095

Petitioner's claim regarding his enhanced sentence as follows:

> Under Minn. Stat. § 609.1095, the state must prove that a defendant has two or more prior convictions for violent crimes. Here, however, the state failed to admit evidence of convictions but relied, instead, on copies of complaints and a MNCIS docket sheet. Because the state failed to provide the proper evidence, this court should vacate the enhanced sentence and re-sentence petitioner to the presumptive guidelines sentence. Further, the trial court erred in sentencing petitioner as being a danger to public safety where the prior convictions were old and the recent incident was a domestic dispute initially provoked by the complainant.

---

[8]   Again the Court notes that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67–68.  As such, to the extent that the claims set forth in Petitioner's Brief are based on a violation of Minnesota state law, they should be denied as those errors cannot form the basis of habeas relief.  However, given that Petitioner asserted in Ground Two of the Petition that his due process rights were violated where the court and the prosecutor gained an unfair advantage over him as pro-se defendant, the Court will proceed with analyzing these claims, as theoretically they could be encompassed by that ground.

Petitioner's Brief, pp. 4, 38-41.

According to Petitioner, the prosecutor failed to submit certified copies of the judgments of conviction of prior felonies the jury was asked to consider in determining whether Petitioner was a danger to the public, and that the hearsay complaints and sentencing fact sheets from Minnesota court's case management system ("MNCIS") were insufficient. Id., p. 38.

The Minnesota Court of Appeals rejected this claim as follows:

> The district court record includes evidence of at least two prior convictions of the type required by section 609.1095, subdivision 2. First, exhibit B3, which was admitted into evidence during the sentencing trial, shows that Briggs was convicted of attempted simple robbery in 2002 in Hennepin County. Simple robbery is expressly designated as a "violent crime." See Minn. Stat. §§ 609.1095, subd. 1(d), .24 (2006). Briggs argues that Exhibit B3 is not a certified copy, but we have reviewed the original and have confirmed that, on the back of the document, it is certified and signed by the deputy court administrator.
>
> Second, exhibit 9, which was admitted into evidence during the guilt phase of trial, shows that Briggs pleaded guilty to third-degree assault in 2003 in Hennepin County. Third-degree assault is expressly designated as a "violent crime." See Minn. Stat. §§ 609.1095, subd. 1(d), .223 (2006). When imposing sentence, a district court is free to consider evidence presented during the guilt phase of a trial. See State v. Terpstra, 546 N.W.2d 280, 283 (Minn.1996) (affirming sentence based on evidence presented at trial); State v. Bendzula, 675 N.W.2d 920, 924 (Minn.App.2004) (same).

Briggs, 2009 WL 1444026 at *9.

Under Minn. Stat. § 609.1095, subd. 2, an increased sentence is allowed where the court determines on the record at the time of sentencing that the offender as <u>two or more</u> prior convictions for violent crimes. <u>See</u> Minn. Stat. § 609.1095, subd. 2

"A sentencing court has a wide discretion and may consider any relevant information that may assist the court in determining a fair and just sentence." <u>United States v. Gant</u>, 663 F.3d 1023, 1029 (8th Cir. 2011) (citing <u>United States v. Pratt</u>, 553 F.3d 1165, 1170 (8th Cir. 2009). The information considered does not need to be admissible under the Federal Rules of Evidence if it has an indicia or reliability. <u>Id.</u> (citing <u>Pratt</u>, 553 F.3d at 1170 (citation omitted). "A court may consider relevant information that '[includes] criminal activity for which the defendant has not been prosecuted and uncorroborated hearsay, provided the [defendant is] given a chance to rebut or explain it.'" <u>Id.</u> at 1029-30 (quoting <u>Pratt</u>, 553 F.3d at 1170 (alteration in the original)).

Here, Petitioner does not dispute, nor does he offer any evidence to the contrary concerning the Minnesota Court of Appeals' finding that that Exhibit B3 was a certified copy of a commitment to the commissioner of corrections in conjunction for a guilty plea to a felony attempted simple robbery. Tr. 673 (representing that Exhibit B3 was a certified copy). Second, Petitioner did not address Exhibit 9, which was admitted during trial. Officer Kiplinger, the officer responsible for Petitioner's case, testified that Exhibit 9 was a certified copy of a criminal complaint, a petition to enter a guilty plea and conviction documents, which had been stamped as certified, regarding a felony assault in the third degree. Tr. 423, 425. Petitioner was asked if he had any objection to these documents and he replied, "No ma'am." Tr. 425. The exhibit was received. <u>Id.</u> Both

Exhibit 9 and Exhibit B3 were presented to the jury as part of the determination for an enhanced sentencing.  Tr. 685-686.  Thus, the Court finds that there were no hearsay issues with regard to these two convictions that were admitted to the jury as it relates to sentencing under Minn. Stat. § 609.1095.   Further, even to the extent that other evidence in the form of copies of criminal complaints and MNCIS sentencing sheets constituted hearsay evidence, the Court concludes that because Petitioner had an opportunity to challenge and address such evidence, there was no error in having the documents considered as a part of the sentencing.

Therefore, the state court's decision regarding this issue was not contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court, and this claim should be dismissed.

### 2.    Prosecutorial Misconduct:  Denigration of Defense

Petitioner argued that the prosecutor improperly denigrated his right to self-defense by asserting to the jury that he was representing himself so he could exert control.  See Petitioner's Mem., pp. 25-26.  In particular, Petitioner, referred to a portion on the prosecution's opening statement and closing statement:

> Control. He's representing himself, so he can control. But make the right call. His reign of control must end. And ladies and gentlemen, it's in your hands after the evidence is before you. Thank you.
>
> * * *
>
> So James Garnett. That's who you've met here I from afar in court. You've seen a good bit about how he I acts, about how he seeks to have control, about how he tries to grab and wrestle control away from other people.
>
> (Excerpt 3D played for the jury:

> MR. GARNETT: So I'm gonna tell you when you talk to that man, I'm gonna let you know now I don't know I what the fuck you gonna say to him, but whatever you say to him you -- I don't know what the fuck but like I don't I know baby. Just plead the whatever. You still pleading the Fifth or what? I don't know. But I tell you whatever you say to him, it better not be too hard. But XXXX and them will be gone anyway, ain't it?
>
> End of Excerpt 3D).

Tr. 137, 621-22 (emphasis added).

The test for reversible prosecutorial misconduct is as follows:

> 1) the prosecutor's remarks or conduct must have been improper; and 2) such remarks or conduct must have prejudicially affected defendant's substantial rights so as to deprive him of a fair trial.... If this court reaches the second step, the factors we consider are 1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court.

United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000) (citations omitted).  The

Eighth Circuit also noted that "[t]he critical question, for purposes of review, is whether

the argument of which the defendant complains was so offensive as to deprive the

defendant of a fair trial." Id.

In its decision, the Minnesota Court of Appeals held:

> The general rule is that it is improper for a prosecutor to disparage a defense. Whether the prosecutor's comment is plainly in violation of the rule is a close call. Even if it were, however, we would conclude that the single reference during opening statement did not affect Briggs's substantial rights. Over a period of four days, the jury heard testimony from four individuals who witnessed the alleged assault and threats. The four witnesses' accounts were consistent. The jury also heard an audio recording of the 911 call in which L.E. told the dispatcher that Briggs had threatened and

> assaulted her and her children. In light of the overwhelming
> evidence, the state has satisfied the third requirement of the
> plain error test.

Briggs, 2009 WL 1444026 at *5.

Even assuming that the prosecution's vague statement during opening statements that Petitioner was "representing himself, so he can control" was improper, an attempt to impugn his motives is inconsequential in light of the significant evidence presented at trial through the victims' and witnesses' testimony and the recordings of statements from Petitioner that he had had threatened and assaulted the victim and her children. As for the prosecutor's statement during closing argument that Petitioner takes control from people, this Court finds that this statement is a reasonable inference taken from evidence admitted during the trial, including the subsequent audio recording played by the prosecution of Petitioner telling the victim what to do in order to affect the case against him.

Based on the above, the Court finds that the state court's decision regarding this issue was not contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court, and this claim should be dismissed.

### 3.    Prosecutorial Misconduct:   Referring to Evidence Not in the Record

Petitioner asserted that the prosecution improperly told the jury that he had much more evidence to show regarding Petitioner's harassment, by stating that he possessed 300 phone calls to which they could listen.   See Petitioner's Mem., p. 27.   The Minnesota Court of Appeals found that this statement by the prosecution was not attempting to imply that there was additional un-admitted evidence in the form of taped

telephone calls, but rather a proper rebuttal of Petitioner's assertion that the prosecution was withholding evidence.  See Briggs, 2009 WL 1444026 at *5.

In order to take the statement in proper context, the following statement by Petitioner to the jury must be considered:

> Those phone calls you didn't hear the whole conversation. You didn't hear the whole conversation cuz he didn't want you to hear what Lois said and why I was saying the things that I said. Because there's fifteen minutes to each and every last one of those calls. He gave you thirty seconds. Forty seconds. That's not the whole conversation. He didn't let you hear what Ms. Escho was asking herself because then he couldn't use it. I don't have fancy gadgets. I don't have them. I'm in jail. All I have is paper and a memory and the truth.

Tr. 628.

The prosecution responded to this statement as follows:

> I ask you all to ignore everything he alleges was a fact that you don't recall as a fact that came in here. Those aren't before you. We talked about control and intimidation and manipulation, and now he's trying to control this with false facts, with make-believe facts.  I'm not sure if anyone sees things the same way he does. He made a point about why part of the tapes. Well, we could sit here and listen to 300 and whatever number of phone calls, but instead we selected the relevant pieces.  The defendant had access to those. He could have cross-examined on any part of any tape, played it all.  He could have chosen to do that and didn't. You know why.

Tr. 644.

"[A]n attorney may not say anything to the jury implying that evidence supporting the attorney's position exists but has not been introduced in the trial"  United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978) (string citation omitted).  However, in this case the prosecutor was not asserting that he had 300 or more calls constituting evidence

that demonstrated that Petitioner was guilty.   He stated that he only selected the relevant portions of calls for the jury to consider.   Regardless, the prosecutor's statement that Petitioner had access to the tapes, could have cross-examined witnesses on any part of the tapes, and could have played any part of the tapes, was merely proper rebuttal to Petitioner's assertion that the prosecutor intentionally did not play the entire tapes because he did not want the jury to hear why he was saying the things he stated on the recordings.   Thus, the Court finds that the state court's decision regarding this issue was not contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court and this claim should be dismissed.

### 4.     Prosecutorial Misconduct:     Eliciting Testimony Regarding Contacts

According to Petitioner, the prosecutor elicited information from a police officer during trial regarding Petitioner's criminal history showing that he had aliases.   See Petitioner's Mem., p. 27.   Petitioner argued that his aliases had no relevancy to the claims at issue.   Id.

The testimony referenced by Petitioner dealt with the prosecutor asking a police officer regarding Petitioner's aliases as reflected in his criminal history.  Tr. 423.

First, as it does not appear that this claim was presented to the state appellate court for consideration, the Court finds that Petitioner has procedurally defaulted on the claim and it cannot be entertained because he has not shown cause and prejudice to excuse the procedural default, or that there would be a fundamental miscarriage of justice if the Court refused to address the claim.   Second, even assuming the claim were properly before this Court, the Court finds that the issue of multiple aliases could

46

be relevant to Petitioner's credibility.   Third, the fact that evidence introduced at a criminal trial is not relevant is not in of itself improper.   "Questions concerning the admissibility of evidence are matters of state law and are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process." Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir. 1983) (citing Richards v. Solem, 693 F.2d 760, 767 (8th Cir. 1982); Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976)).

Petitioner has not provided this Court with any argument as to why such testimony was prejudicial to the level that he was deprived of due process, and the Court will not speculate on his behalf.   Therefore, this Court finds that this claim should be dismissed.

### 5.   Prosecutorial Misconduct:  Use of Charging Authority in an Abusive Manner

Petitioner asserted that the prosecutor used his prosecutorial charging authority in an abusive manner by issuing 24 complaints regarding violating an order for protection close to the beginning of trial, and he did so to leverage a guilty plea and to attempt to deny his right to a speedy trial.  See Petitioner's Mem., pp. 28-30.   The Minnesota Court of Appeals found no prosecutorial error as to the present case because these complaints were dismissed, the evidence of the violations were not used and Petitioner never contended that his right to a speedy trial was violated.  Briggs, 2009 WL 1444026 at *6.

To the extent that the prosecutor was trying to use the new 24 complaints to get him to plead in the present case, there was no harm, as he obviously never pled. Additionally, Petitioner has not pointed this Court to any evidence that the prosecution

used evidence of the alleged violations of the order for protection against him in the trial. Finally, to the extent that the prosecutor sought to use the new complaints to violate his right to a speedy trial, no such violation has been alleged in this case.

Based on the above, the Court finds that the state court's decision regarding this issue was not contrary to, nor did it involve an unreasonable application of, the decisions of the United States Supreme Court and this claim should be dismissed.

## IV   CONCLUSION

In summary, this Court finds that the state court's holdings regarding the issues raised by Grounds One, Two, Four and Five was not contrary to, nor did they involve an unreasonable application of the decisions of the United States Supreme Court.  As to Ground Three, the Court concludes that Petitioner did not properly exhaust his state court remedies prior to bringing this claim.  In addition, the Court finds that the state court's decision regarding the issue raised by Ground Three cannot addressed because it is solely based on Minnesota Rules and case law.  The Court also recommends dismissal of any new claims in Petitioner's Brief that were not raised in the Petition and on their merits.  For all these of reasons, the Petition should be dismissed with prejudice.

## V.   CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Copeland v. Washington, 232 F.3d 969, 977 (8th Cir. 2000).  To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the issue must deserve further proceedings.

See Flieger v. Delo, 16 F.3d 878, 882–83 (8th Cir. 1994).  The Court finds that another court would not decide the issues raised in this section 2254 motion differently.  For this reason, the Court concludes that Petitioner has failed to make the required substantial showing of the denial of a constitutional right, and the Court denies a certificate of appealability.

## IV.   RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1.   James Garnett Jr.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

2.   Petitioner **SHOULD NOT** be granted a Certificate of Appealability

Dated:        May 31, 2012

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 14, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.